UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTHA P.[1],

                Plaintiff,                Civil Action No. 23-10134

v.                                            Denise Page Hood
                                                United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                        David R. Grand
                                                United States Magistrate Judge

                Defendant.

_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Martha P. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 12, 14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.     **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

for Summary Judgment **(ECF No. 14)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.  REPORT

### A.  Background[2]

Plaintiff was 53 years old at the time of her application date of October 23, 2020,[3] and at 5'9" tall weighed approximately 150 pounds. (PageID.88, 244). She completed high school, taking special education classes, but has never worked. (PageID.244-45). She now alleges disability primarily as a result of anxiety, panic attacks, post-traumatic stress disorder ("PTSD"), and achalasia of the esophagus. (PageID.88, 244).

After Plaintiff's application for SSI was denied at the initial level on January 12, 2021 (PageID.114-17), and on reconsideration on October 4, 2021 (PageID.128-29), she timely requested an administrative hearing, which was held on April 27, 2022, before ALJ Andrew Sloss (PageID.53-65). Plaintiff, who was represented by attorney Frank Cusmano, testified at the hearing, as did vocational expert Charlotta Ewers. (*Id.*). On May 6, 2022,

---

[2] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 6.

[3] Plaintiff filed prior applications for child's insurance benefits and SSI on December 4, 2017, and October 26, 2017, respectively. (PageID.69). On March 28, 2019, ALJ Christopher Mattia issued a decision denying those applications. (PageID.69-82). Plaintiff did not seek review of that decision. (PageID.40). However, it bears mentioning that ALJ Mattia found Plaintiff's severe impairments to include persistent depressive disorder, anxiety, posttraumatic stress disorder, and cognitive disorder. (PageID.72).

2

the ALJ issued a written decision finding that Plaintiff is not disabled under the Act. (PageID.37-47). On December 21, 2022, the Appeals Council denied review. (PageID.23-27). Plaintiff timely filed for judicial review of the final decision on January 18, 2023. (ECF No. 1).

>   B.     **The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

3

claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 23, 2020 (the application date). (PageID.39). At Step Two, the ALJ found that she has the medically determinable impairments of asthma, major depressive disorder, generalized anxiety disorder, PTSD, and cognitive disorder. (PageID.40). However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, are "severe," in that they did not significantly limit her ability to perform basic work-related activities for twelve consecutive months. (*Id.*). As a result, the ALJ concluded that Plaintiff has not been disabled under the Act since October 23, 2020, the application date. (PageID.47).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a

4

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations

5

omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

As set forth above, the ALJ found that Plaintiff has the medically determinable impairments of asthma, major depressive disorder, generalized anxiety disorder, PTSD, and cognitive disorder. (PageID.40). He then concluded that none of these impairments, alone or in combination, were severe within the meaning of the Act during the relevant time period. (*Id.*). On appeal, Plaintiff argues that the ALJ erred by not finding her mental health problems (PTSD, anxiety, and depression) to be severe impairments.[4] (ECF No. 12, PageID.631-36).

At Step Two of the sequential evaluation process, the ALJ must determine whether

---

[4] Plaintiff also argues that the ALJ erred in evaluating her migraine headaches. (ECF No. 12). Social Security Ruling ("SSR") 19-4p, which provides guidance on evaluating primary headache disorders, requires that the headache disorder be documented by an acceptable medical source; last at least 12 months in duration; the diagnosis must be consistent with treatment notes; and a response to treatment (or lack thereof) can be considered as well. *See SSR 19-4p*, 2019 WL 4169635 (Aug. 26, 2019). Here, the medical record shows that Plaintiff was diagnosed with and treated for migraine headaches (with auras) on a regular basis since at least 2020. (PageID.376, 378-79, 383, 386, 547-49, 551, 555-56 (noting Plaintiff was taking Imitrex 50mg daily to treat migraines between April 2020 and January 2022)). At a February 10, 2022, appointment, it was noted that "Imitrex is not giving [Plaintiff] relief [from] migraines"; thus, Plaintiff was taken off Imitrex and Amitriptyline and started instead on Nurtec 75mg and Topamax 25mg. (PageID.544). Thus, the ALJ appears to have not appropriately considered Plaintiff's headache disorder, which lasted more than a year, and was treated with an assortment of medications due to an inability to control her symptoms. Because the Court is recommending remand on the specific grounds related to Plaintiff's mental impairments, it need not consider in further detail the merits of Plaintiff's argument regarding her migraine headaches. On remand, however, the ALJ should ensure that full consideration is given to this condition, as required by *SSR 19-4p*.

a claimant has a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act …." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.*

The Sixth Circuit has "characterized step two of the disability determination process as a 'de minimis hurdle.'" *Despins*, 257 F. App'x at 929 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). The inquiry at Step Two functions as an "administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n. 1 (6th Cir. 1985)). Reasonable doubts on severity should be resolved in favor of the claimant. *See Mason v. Comm'r of Soc. Sec.*, No. 5:23-CV-331, 2023 WL 7386420, at *7 (N.D. Ohio Nov. 8, 2023) (quoting SSR 85-

7

28, 1985 WL 56856, at *4 ("Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end [at Step Two]. Rather, it should be continued.")). Under this standard, then, the question is "whether there is substantial evidence in the record supporting the ALJ's finding that [Plaintiff] has only a 'slight' impairment that does not affect [her] ability to work." *Farris*, 773 F.2d at 90.

At the administrative hearing, Plaintiff testified that she was raped at age 25, leading to her current struggles with anxiety, depression, and PTSD. (PageID.58-59; *see also* PageID.260). She indicated she has panic attacks every couple of weeks; when they happen, she has to take Xanax and isolate herself in a "completely dark" room for at least a day. (PageID.59). She has difficulty completing tasks, following spoken directions, handling stress and changes in routine, and getting along with authority figures (especially men). (PageID.265-66). Plaintiff further testified that, just prior to the hearing, her psychologist had referred her to a psychiatrist, who would be better able to manage her medications and treat her ongoing mental health needs. (PageID.58).

The medical evidence indicates that Plaintiff attended multiple therapy sessions at Ascension Genesys Hillside Center for Behavioral Health ("Hillside") during the relevant time period. On October 29, 2019, she reported symptoms of anxiety, including racing thoughts, excessive worrying, agitation, fatigue, sleep difficulty, frustration, and irritability. (PageID.356). On December 4, 2019, Plaintiff's psychologist, Robert Bates, MS, LLP, diagnosed her with generalized anxiety disorder and opined that her condition

8

was "moderate in severity" and interfered with general functioning. (PageID.359). The same was true over the course of the next few months.[5] (PageID.361, 363, 365, 367, 373). Treatment records from Plaintiff's primary care physician, Edward Holden, M.D. show that during 2019 and 2020, he was prescribing Xanax 0.5mg, one to two times a day, for recurring panic attacks. (PageID.380, 383, 388, 390). In July 2021, Plaintiff resumed therapy at Hillside; treatment notes show reports of depression and anxiety that were "not well controlled." (PageID.519-20). Over the next few months, Plaintiff continued to attend therapy regularly; it was noted that the pandemic had increased her anxiety, which was still "moderate in severity" in November 2021. (PageID.523-29).

On July 20, 2021, Plaintiff underwent a psychological consultative evaluation with Matthew Dickson, Ph.D.[6] (PageID.501-05). Dr. Dickson noted that Plaintiff had a "mild oddity to her"; "seems unsophisticated socially and lacks nuance in communication"; and "expresses herself bluntly … despite not meaning any offense." (PageID.502). He found Plaintiff's social presentation "consistent with mild traits of Asperger's / social communication difficulties." (*Id.*). She presented as anxious and had "mild difficulty assessing subtle social cues and lack[ed] nuanced modulation of behavior for the situation." (*Id.*). Her speech was described as generally unimpaired but "lack[ing] normal fluidity"

---

[5] On May 27, 2020, Plaintiff's therapy services at Hillside were terminated after 13 sessions. Dr. Bates noted a belief that "the COVID-19 situation may have affected her ongoing involvement [in therapy] …." (PageID.351). On discharge, Plaintiff's prognosis was characterized as only fair. (*Id.*).

[6] Plaintiff also attended a consultative physical examination with Scott Lazzara, M.D. on September 18, 2021. (PageID.510-14). Dr. Lazzara specifically noted that Plaintiff's "main issue appears to be her anxiety and PTSD." (PageID.514).

9

and "mildly choppier than normal." (PageID.503). Dr. Dickson opined that:

> It is my impression that [Plaintiff's] condition is consistent with a lifelong neurodevelopmental disorder with [autism spectrum disorder] / Asperger's traits including problems with social communication / interaction, establishing relationships, emotional instability, and speech abnormalities. Her history of trauma likely exacerbated some of these issues and augmented her anxiety.

(PageID.504). Dr. Dickson diagnosed Plaintiff with a neurodevelopmental disorder with autism spectrum disorder traits; unspecified trauma and stressor-related disorder with social anxiety; and unspecified depressive disorder. (*Id.*). He opined that Plaintiff is mildly limited in the ability to understand, attend to, remember, and carry out instructions, and moderately limited in the abilities to perform activities within a schedule, maintain regular attendance, and complete a normal workday/workweek; respond appropriately to co-workers, supervision, and others in the workplace; and deal with normal pressures in a competitive work environment. (*Id.*). Dr. Dickson further opined that Plaintiff "would not be successful in a position with high interpersonal demands or high stress" and characterized her prognosis as guarded. (*Id.*).[7]

A few months later, on April 13, 2022, Dr. Holden completed a Medical Source Statement, indicating that Plaintiff has difficulty focusing, difficulty with interpersonal communication, and social/situational anxiety. (PageID.610). He further opined that Plaintiff's anxiety contributes to her need for a work-preclusive amount of time off task,

---

[7] The state agency examiner who reviewed Plaintiff's medical records on reconsideration in September 2021 opined that her mental impairments are severe, and that she is limited to only "simple, routine tasks in a low stress environment requiring minimal contact with the general public." (PageID.101-02).

10

absenteeism, and intolerance of stress. (PageID.611-14).

As part of the Step Two analysis, the ALJ is required to "articulate how [he] considered the medical opinions and prior administrative medical findings …." 20 C.F.R. § 416.920c(a). An ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." *Id.* Further:

> Even though these new regulations are less demanding than the former rules governing the evaluation of medical evidence and prior administrative findings, an ALJ is still required to provide a coherent explanation of [his] reasoning. The new regulations set forth a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court. An ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability determination was supported by substantial evidence.

*Mason*, 2023 WL 7386420, at *10 (internal citations and quotations omitted).

Here, the ALJ discounted all of the medical opinions and administrative findings discussed above, but he failed to sufficiently articulate his reasons for doing so, and the reasons he did articulate are not supported by substantial evidence. Specifically, the ALJ found Dr. Dickson's "proposed limitations not fully persuasive because [they were] based on one examination and the opinion is not fully supported by other medical opinion evidence …." (PageID.44) (internal citations omitted). There are several problems with the ALJ's evaluation of Dr. Dickson's opinion. First, it does not appear that the ALJ considered the fact that, as a psychologist, Dr. Dickson is a specialist in mental health matters, which is a relevant consideration. *See* 20 C.F.R. § 416.920c(4) ("The medical

11

opinion … of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion … of a medical source who is not a specialist in the relevant area of specialty."). Second, while it is true that Dr. Dickson's opinion was based on "one examination," the ALJ does not specify what "other medical opinion evidence" is purportedly at odds with his opinion. Indeed, Dr. Lazarra (the consultative physical examiner), Dr. Holden (Plaintiff's primary care physician), and Dr. Gensterblum (the state agency examiner) all opined that Plaintiff's mental impairments cause some level of functional limitations, which seems to be consistent with Dr. Dickson's opinion. (PageID.101-02, 514, 610-14). And, third, while the ALJ did not fully credit any of these three other opinions either, his reasons for declining to do so are somewhat circular. (PageID.43 (noting Dr. Lazzara's recommendation that Plaintiff undergo a neuropsychological evaluation and purportedly considering this recommendation "in determining the residual functional capacity ["RFC"] assessment" – although no such RFC assessment was conducted); PageID.45 (discounting Dr. Holden's opinion "because treatment records do not support greater limitations" without citing specific records conflicting with his opinion); PageID.45-46 (finding Dr. Gensterblum's opinion to have "some persuasiveness" but nevertheless discounting his determination that Plaintiff's mental impairments are severe because certain unspecified "evidence received at the hearing level" allegedly shows otherwise)). In summary, then, the ALJ failed to provide a coherent explanation of his reasons for rejecting the medical opinions and administrative findings related to Plaintiff's mental impairments, frustrating this Court's ability to

determine whether his disability finding was supported by substantial evidence. *See Mason*, 2023 WL 7386420, at *10; *see also Huntington v. Comm'r of Soc. Sec.*, No. 18-11873, 2019 WL 1388956, at *5 (E.D. Mich. Mar. 4, 2019) (remanding where reasons articulated for discounting physician opinion were not supported by substantial evidence); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Given all of these facts, the Court cannot conclude that the ALJ's Step Two finding that Plaintiff's mental impairments are non-severe is supported by substantial evidence. Indeed, the evidence suggests just the opposite – namely, that Plaintiff's mental impairments, which required treatment with medication, progressively more intensive therapy and medication, and further testing – was sufficiently severe to satisfy the "*de minimis* hurdle" posed at Step Two of the sequential analysis. Although Plaintiff's mental impairments might ultimately be deemed non-disabling during the relevant time period, that determination can only properly be made after a more complete application of the five-step sequential analysis. The record in this case suggests that Plaintiff is not presenting a "totally groundless" claim from a medical standpoint, *Higgs*, 880 F.2d at 863, and accordingly, remand is warranted.[8]

---

[8] While the VE did testify that a hypothetical individual with certain mental limitations could perform jobs within the national economy (PageID.62-63), if the ALJ had properly evaluated the medical opinion and other evidence of record he reasonably could have found that additional mental limitations were warranted, which the VE testified would have been work-preclusive (PageID.63-64). Thus, the ALJ's Step Two finding that Plaintiff's mental impairments are non-severe cannot be viewed as harmless error. *See Johnson v. Comm'r of Soc. Sec.*, No. 20-12283,

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 12)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: December 11, 2023            s/David R. Grand
Ann Arbor, Michigan                 DAVID R. GRAND
                                    United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

---

2022 WL 333372, at *6 (E.D. Mich. Jan. 19, 2022) (ALJ's failure to account for plaintiff's full degree of limitation is not harmless error).

1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 11, 2023.

                                         s/Eddrey O. Butts
                                         EDDREY O. BUTTS
                                         Case Manager